**UNITED STATES of America**

v.

**Carl Virgil WACKER.**

**Crim. Nos. 2509, 2511.**

United States District Court
W. D. North Carolina,
Asheville Division.

Aug. 28, 1963.

William Medford, U. S. Atty., Robert J. Robinson, J. O. Israel, Asst. U. S. Attys., Asheville, N. C., for plaintiff.

C. Walter Allen, Asheville, N. C., for defendant.

WARLICK, District Judge.

This matter is before the Court for hearing on a motion filed by the petitioner under the provisions of 28 U.S.C.A. § 2255, seeking the vacation of a sentence of twenty-five (25) years imposed upon him on November 23, 1955.

Petitioner, Carl Virgil Wacker, together with his co-defendants Norman Bebik and Bernard Edward Gosnell, were tried in this Court on November 21–23, 1955, under two bills of indictment charging as follows:

1. Criminal No. 2511—3 counts charging violations of the Bank Robbery Statute, 18 U.S.C. § 2113, in that petitioner and Norman Bebik took from the Hot Springs Branch of the Citizen's Bank of Marshall, North Carolina, $19,434, by force and violence and by use of dangerous weapons, pistols, said bank having had its deposits insured by the Federal Deposit Insurance Corporation.

2. In Criminal No. 2509, Petitioner, Bebik and Gosnell were charged with the

conspiracy to violate the provisions of the Bank Robbery Statute, said indictment containing five (5) overt acts, all in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2113.

The offenses were alleged to have taken place between the dates of May 15, 1955, and May 18, 1955.

When tried in November of 1955, petitioner was represented by counsel of his own choosing, John C. Cheesborough, an outstanding attorney of the Asheville Bar. The defendant, Gosnell, in No. 2509 entered a plea of guilty. Petitioner and Bebik pleaded not guilty in both cases and were tried by a jury. The jury returned a verdict of guilty as to each and judgment was consolidated in both cases as to Wacker and Bebik and each was given twenty-five (25) years to serve. Gosnell was sentenced to serve a term of ten (10) years.

Petitioner and Bebik filed an appeal to the Fourth Circuit Court of Appeals, but failed to perfect the appeal within the time allowed; and, accordingly, the appeal was dismissed. However, the Court of Appeals, before granting the motion to dismiss, and in view of the length of the sentences imposed, undertook an examination of the entire record to determine whether there was any merit in the appeal. The appeal was disposed of by per curiam opinion in Wacker v. United States, 231 F.2d 659, wherein the Court stated:

" * * * a careful examination of the record satisfies us that there is no merit whatever in the appeal and that the motion to dismiss should be granted."

Thereafter, on July 19, 1961, the petitioner's co-defendant, Norman Bebik, filed a motion to vacate sentence before this Court on the ground that the District Judge did not afford him an opportunity to address the Court on the matter of punishment before sentence was imposed. That motion was denied without hearing by this Court on July 24, 1961, and Bebik appealed to the Fourth Circuit Court of Appeals. By an opinion filed May 2,

1962, entitled United States v. Bebik, 302 F.2d 335, the Court of Appeals, through Judge Soper's opinion, affirmed this Court's dismissal of the motion without hearing.

Petitioner filed the motion under consideration jointly with co-defendant, Norman Bebik, on January 22, 1963. Prior to this time Bebik had filed a separate motion to vacate sentence. The motion states the following relative to Wacker's contentions:

"Petitioner Wacker pleads the same contentions as set forth with respect to mental incompetency at time of trial and sentence as has been alluded to and alleged in petitioner Bebik's prior motion * * * that he be permitted to join in petitioner Bebik's prior motion to this Court in the interest of brevity."

Thereafter, the Court granted a hearing in this matter and on May 20, 1963, petitioner was returned from the United States Penitentiary at Atlanta, Georgia, and brought before the Court. Upon advising the Court that he was without counsel, and requesting that counsel be appointed to represent him, the Court appointed C. Walter Allen, Jr., an attorney of the Asheville, North Carolina Bar, to represent him. After affording Mr. Allen sufficient time to confer with petitioner, the matter was recalled on May 22, 1963, for hearing, at which time Mr. Allen announced that petitioner had received funds from a relative and advanced same to him in order to compensate him as counsel. At the hearing and prior to undertaking the burden of presenting evidence, petitioner's attorney stated four (4) matters which he desired to be presented at the hearing as reasons to set aside and vacate the judgment of November 23, 1955:

1. That petitioner was not afforded the opportunity for allocution;

2. That there was no transcript made of the arguments to the jury by the Court Reporter;

3. That certain argument to the jury was prejudicial; and

4. That petitioner at the time of trial, during the course of the trial, and immediately thereafter was not of a mind to know what was going on at the time of his trial.

In addition to the matters announced by petitioner's attorney as his grounds for vacating the sentence, petitioner contended in his testimony:

1. That FBI agents were continuously in his company for a period of two or three months prior to his trial and did not allow him to confer privately with his counsel prior to trial, which prevented him from properly preparing his defense;

2. That he did not receive medical attention for a leg ailment and that the jail food was not good; and

3. That the United States Attorney in his argument to the jury made certain prejudicial accusations as to his character.

Initially, it must be stated that these matters should have been presented upon his appeal from the conviction in November of 1955. However, as a full hearing has been conducted, the following facts are found:

## FINDINGS OF FACT.

1. Upon being charged with the robbery of the Hot Springs Bank, Petitioner was removed from the State of Ohio to North Carolina to await trial in the United States District Court in the Western District of North Carolina, at Asheville. In default of bond, he was confined in the Buncombe County jail. Prior to the time of his trial he was confined in the Federal section of this jail and afforded the same privileges as other inmates therein. During this period the United States Marshal was constantly in contact with petitioner and was never advised of any mistreatment he was receiving such as not receiving food and not being able to see a physician about an alleged leg ailment. Also, during the six months interval between the commission of the crime and the time of trial, FBI agents Moore and McCracken only interviewed petitioner on four to six occasions with most of the interviews being of a short duration.

2. That at no time prior to his trial were agents Moore and McCracken in the presence of petitioner and his attorney while they were discussing the preparation of his defense. Petitioner and his attorney discussed the case privately on six to eight occasions, although on some occasions co-defendant, Bebik, and his attorney, I. C. Crawford, were also present. For obvious security purposes, the Court and the United States Marshal's office deemed it ill-advised to allow the petitioner to discuss the case privately with his counsel and several out of town witnesses without a Marshal being present. But the record does reveal that on November 14, 1955, the Court signed an order granting petitioner the right, in preparing his defense, to have personal interviews or conferences at reasonable hours with his prospective witnesses in the Buncombe County Jail in the presence of his attorney and without the presence of any U. S. Marshal, Deputy Marshal or other officer of the United States Government. Chief Deputy Marshal Teal also testified that a satisfactory arrangement was worked out with Mr. Cheesborough about interviewing the prospective witnesses.

The obvious security reasons mentioned here arose from very credible evidence which the authorities obtained that friends and associates of the mid-west gangland had set in motion certain steps which would make it possible for them either through the medium of getting into the jail or during the progress of the trial, to "spring" them, as the word is used in those circles, from custody and permit them to escape from the Marshal's control, and avoid trial. This information was carefully checked and proving reliable, forced precautionary measures to be taken. None of these however in any wise deprived petitioner or his co-defendant of the privilege of private conferences with their attorneys and witnesses.

3. Petitioner has asserted that certain prejudicial argument was made to

the jury by former United States Attorney James M. Baley, Jr. The Court finds that this allegation is totally unsupported, that no objection was made to the United States Attorney's argument at the time of trial and that the undersigned Judge who heard the case was present at all times during said argument and did not hear any unfair arguments or statements made as being improper or unfair to the petitioner. Mr. Baley in his testimony denied having made any of the alleged remarks to the jury, and it is found as a fact that his testimony is worthy of belief and, I consequently find that no prejudicial remarks or statements were made in his summation to the jury.

4. With reference to the procedure and conduct of the petitioner's trial, November 21–23, 1955, the Court of Appeals, in Wacker v. United States, supra, has already affirmed the trial procedure after an examination of the entire file. The trial proceedings, therefore, will not be considered herein except with reference to the question of the petitioner's mental competency at the time of his trial.

5. With reference to the question of whether petitioner was afforded the right of allocution, the same facts and circumstances were considered by the Court of Appeals in United States v. Bebik, supra, wherein the Court held that the failure of the Court to give the prisoner the right of allocution could not be raised in a Section 2255 proceeding. However, Judge Soper stated therein that the question was left open whether such error would entitle petitioner to relief under Section 2255 if it were shown that the denial of the right was accompanied by other aggravating circumstances. Therefore, this Court finds as a fact that petitioner in his evidence offered at the hearing failed completely to show any aggravating circumstances sufficient to warrant vacation of sentence as each and every allegation he brought forward was clearly refuted by the evidence presented by the Government as well as by certain of his own admissions.

6. That with reference to the mental competency of the accused at the time he was tried, the witnesses at the hearing testified as follows:

(a) Former United States Attorney James M. Baley, Jr., Chief Deputy United States Marshal J. Paul Teal, Jr., Former trial counsel, John C. Cheesborough all testified that it was their opinion that petitioner was mentally competent at the time of trial, understood the nature of the charges pending against him, and was able to participate in his defense. Further that at the time of the offenses for which he was tried, May 15–18, 1955, he was able to know the difference between right and wrong and the consequences of any action which he might commit. I therefore find that from this evidence petitioner was mentally competent at the trial and able to distinguish between right and wrong at the time of the commission of the crime.

(b) It is further found from petitioner's testimony wherein he admitted that he knew the difference between right and wrong, and further from his evidence it is apparent that he was well oriented at the time of trial and able to assist in his defense. His testimony revealed that with reference to hiring an attorney and using the telephone he first called "Mr. Adams" and "Mr. Bennett" before reaching Mr. Cheesborough for the purpose of representing him. The Court finds as a fact that among the members of the Asheville Bar as listed in the yellow pages of a telephone directory there are attorneys named Adams and Bennett and that they were engaged in the practice of law during the year 1955, and still practice there. The Court finds that this indicates a distinct memory for time and events spanning an eight-year period. Further in his testimony petitioner recalled the names of FBI agents Moore and McCracken who were, in fact, the agents primarily in charge of the investigation of the Hot Springs Bank robbery. Petitioner's testimony also revealed that he remembered conversations with his witnesses following the trial and prior thereto and conversations with his attor-

ney, though his memory of the content thereof is not worthy of belief, since it is not now supported by any corroborating evidence.

(c) Upon filing of the motion to vacate sentence by the petitioner, the Court ordered that he be examined by the Board of Medical Examiners of the United States Penitentiary, Atlanta, Georgia, regarding his mental competency and his probable mental condition at the time he was tried. The Board conducted this examination and the results thereof were introduced into evidence at the hearing. Also at the hearing Dr. Laurence L. Bryan, Clinical Psychologist for the United States Public Health Service, stationed at the Atlanta, Georgia Penitentiary and a member of said board, testified. His testimony and the findings of the Board as exhibited by its report were to the effect that petitioner was mentally competent to stand trial and to cooperate with counsel in his own defense in November of 1955. Also introduced into evidence was a document entitled, "The Minnesota Multiphasic Personality Inventory", which had been administered to him by Dr. Bryan, and it was Dr. Bryan's conclusion that petitioner had demonstrated what is commonly known to Clinical Psychologists as a "fake bad curve", that is, an attempt to portray oneself as handicapped by a schizophrenic process. The Court finds that the evidence relative to this test revealed petitioner was attempting to exhibit in himself a type of insanity that was not actually present and came to the conclusion that he was mentally as sharp as a briar. Also introduced into evidence was a Neuropsychiatric Questionnaire executed by the petitioner at the time of his entry into the Atlanta Penitentiary in December, 1955. This document revealed no evidence of mental incompetency at that time, nor inability to distinguish between right and wrong. One must therefore find from the expert testimony and documents presented that there is no evidence that petitioner has ever been mentally incompetent, and specifically it is found

that he was mentally competent to stand trial in November, 1955.

Having fully considered the entire record and the evidence presented at the hearing and based upon the foregoing findings of fact, the Court files the following

## CONCLUSIONS OF LAW.

1. That the motion to vacate sentence heretofore filed by the petitioner, Carl Virgil Wacker, is without merit and the same is hereby dismissed.

2. That at the time of his trial, November 21–23, 1955, prior thereto and since said dates, the petitioner was mentally competent and knew and understood the nature of the charges lodged against him and was able to assist in his defense.

3. That the sentence of twenty-five (25) years heretofore imposed upon the petitioner on November 23, 1955, shall remain in full force and effect.

4. That a copy of these findings and conclusions be delivered to the Warden, United States Penitentiary, Atlanta, Georgia, to the end that he might deliver said copy to the petitioner so that he may be advised of the Court's decision.